In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00365-CR
_____

DARRON DEWAYNE DENBOW JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 128th District Court
Orange County, Texas
Trial Cause No. A-120187-R

## MEMORANDUM OPINION

A jury found Darron Dewayne Denbow Jr. guilty of felony theft. The trial court sentenced Denbow to twenty-four months of confinement in state jail. We conclude the evidence is sufficient to support the jury's verdict.

### THE EVIDENCE

John Romero testified he was working as an asset protection officer for a store in Vidor. He explained that in this capacity he worked undercover in plain clothes and watched the store and video for shoplifters or "anything suspicious[.]"

1

He saw Denbow "squatted down, messing with some packages" in the electronics department." Denbow kept swaying and was looking around. Denbow opened a package that appeared to be a charger used in a car, "cupped" the item in his hand, and "slid it into his front left pocket." Romero observed Denbow get another item, conceal it in his pocket, pick up another item, and stand up. Denbow left the open packages and went to the sporting goods department. He opened a package, set the package on the shelf, and placed the item from the package in his front right pocket.

Romero explained at trial that he had a clear view of Denbow. Romero notified Caleb Smith, an assistant manager, of what was transpiring. According to Romero, Denbow returned to the electronics department, kneeled down, opened another package, concealed the item he had removed from the package, opened another package, and stood up. Romero noted that it was common to see people remove items from the packages to avoid the sensors inside the packages that would set off the store alarm.

Romero stated that he watched Denbow then proceed to customer service. While standing in the line, Denbow "started falling backwards" but "caught himself [and] stood back up[.]" Denbow got out of line, went to a register close to customer service, took an energy drink out of one of the cooler boxes, and got back

2

in line. After a couple of seconds, he got out of line, went around customer service, and entered the area past the registers and between the interior and exterior exit doors. Romero never lost sight of Denbow and watched him for about forty-five minutes.

Romero, with Smith's assistance, stopped Denbow. Romero explained that he was stopping him for the merchandise Denbow had concealed while in the electronics and sporting goods departments. Denbow "kind of stared" at Romero, did not make any statements, and proceeded with Romero to the personnel office at the back of the store. Once in the personnel office, Romero asked Denbow to reveal the items in his pockets. Denbow removed the items. His speech was slurred. While he was in the personnel office, Denbow explained that he was trying to return something. Romero testified that Denbow did not have a receipt. None of the items that Romero had stopped Denbow for, and that Denbow had concealed on his person, had been brought into the store. Romero testified that the items in photographs -- "a Monster drink, an FM transmitter, . . . a couple battery chargers, a GPS battery charger and an audible charger kit" -- were the items, other than the drink, Denbow had concealed on his person. The items in the photographs were collectively worth less than $1500. The items that Romero saw Denbow put in his pockets and then remove from his pockets in the personnel office were from the

3

empty packages left by Romero in the store. Romero stated that neither he nor anyone else employed by the store gave Denbow permission to take the items.

Smith testified that Romero contacted him. Romero indicated he was watching a man "messing with merchandise" in the electronics department. Smith also started watching the man, whom he identified at trial as Denbow. Smith kept his distance because he was in his store uniform and did not want to interfere with Romero's job. Smith witnessed Denbow opening packages in the electronics department, but Smith did not see him conceal anything. Smith did not follow Denbow to the sporting goods department. When Denbow returned to the electronics department, Smith observed him open packages and then go to the service desk. Smith testified that Denbow had one package that was not an item the store carried, and Denbow was trying to exchange it at the service desk. After almost falling into a customer, Denbow left the service desk line, got an energy drink, and was approaching the exterior exit doors when Smith and Romero approached him. They took Denbow back to the personnel office and called the police. Smith retrieved the packages Denbow left behind in the electronics and sporting goods departments. The items in Denbow's pockets matched the empty packages Denbow left behind.

John Estilette, an officer with the Vidor Police Department, testified he was called to the store. Estilette obtained a statement from Romero, issued a criminal trespass warning to Denbow, photographed the property, obtained a copy of a receipt printed for the purpose of showing the value of the items, checked Denbow's criminal history, and placed Denbow under arrest. Estilette said he did not remember Denbow's making any statements admitting or denying the incident. Denbow appeared to be impaired.

STANDARD OF REVIEW

Denbow argues the evidence is insufficient to support the conviction. The "*Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We give deference to the jury's responsibility to fairly resolve conflicting

5

testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13.

## CONCLUSION

A person commits theft if he "unlawfully appropriates property with intent to deprive the owner of property." Tex. Penal Code Ann. § 31.03(a) (West Supp. 2012). "Appropriation of property is unlawful if . . . it is without the owner's effective consent[.]" *Id.* § 31.03(b)(1) (West Supp. 2012). Denbow argues that the evidence supports the fact that he was carrying the items with him into the store and that he was trying to exchange some items. He contends that the fact that he "appeared to be impaired" is a reason why he "might not have done everything in the way he probably should have." He also asserts that the evidence that he had an item not sold by the store in his possession constitutes reasonable doubt that he committed the offense of felony theft.

The jury could reasonably believe Romero's and Smith's testimony. Although Denbow attempts to call that testimony into question, we must give deference to the jury's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. The jury could reasonably conclude beyond a reasonable doubt that Denbow committed the offense of theft. The evidence is

6

sufficient to support the jury's verdict. Issue one is overruled. The trial court's judgment is affirmed.

AFFIRMED.

_____
DAVID GAULTNEY
Justice

Submitted on May 14, 2013
Opinion Delivered May 29, 2013
Do Not Publish

Before McKeithen, C.J., Gaultney and Kreger, JJ.

7